UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANGELA LINVAL,

                     Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
------------------------------------------------------------X

**OPINION AND ORDER**

22 Civ. 3262 (JCM)

      Plaintiff Angela Linval ("Plaintiff") commenced this action on April 21, 2022 pursuant to 42 U.S.C. § 405(g), challenging the decision of the Commissioner of Social Security (the "Commissioner"), which found Plaintiff not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. (Docket No. 1).[1]  Presently before the Court are: (1) Plaintiff's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Docket No. 20), accompanied by a memorandum of law, (Docket No. 21) ("Pl. Br."); (2) the Commissioner's cross-motion for judgment on the pleadings, (Docket No. 24), accompanied by a memorandum of law, (Docket No. 25) ("Comm'r Br."); and (3) Plaintiff's reply in support of Plaintiff's motion for judgment on the pleadings, (Docket No. 26) ("Pl. Reply").  For the reasons set forth herein, Plaintiff's motion is granted, the Commissioner's cross-motion is denied, and the case is remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Opinion and Order.

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Docket No. 15).

## I. BACKGROUND

Plaintiff was born on June 1, 1965. (R.[2] 120).  Plaintiff applied for DIB and SSI on February 20, 2019, alleging a disability onset date of December 21, 2006. (R. 20, 263, 280).  On July 29, 2019, Plaintiff's claim was initially denied. (R. 20).  Plaintiff's claim was again denied upon reconsideration on January 23, 2020. (*Id.*).  Plaintiff then requested an administrative hearing before an Administrative Law Judge ("ALJ"). (*Id.*).  On June 26, 2020, ALJ Selwyn S. C. Walters ("ALJ Walters") held a hearing. (R. 49-96).  ALJ Walters issued a written decision on January 27, 2021, finding that Plaintiff was disabled beginning on May 31, 2020, but was not disabled prior to that time. (R. 20-32).  Plaintiff requested review by the Appeals Council, which denied her request on February 17, 2022, (R. 2-6), making the ALJ's decision ripe for this Court's review.

### A. Medical Evidence Relating to Plaintiff's Physical Impairments[3]

### 1. Medical Evidence Before the Disability Onset Date[4]

### i. North Central Bronx Hospital

On May 7, 2012, Plaintiff visited North Central Bronx Hospital for generalized body pain. (R. 396).  The doctor noted she had a history of poorly controlled diabetes mellitus, high

---

[2] Refers to the certified administrative record of proceedings relating to Plaintiff's application for social security benefits, filed in this action on August 11, 2022. (Docket No. 16).  All page number citations to the certified administrative record refer to the page number assigned by the Social Security Administration ("SSA").

[3] The Court notes that the certified administrative record in this case is over 1,000 pages. (*See* Docket No. 16).  The Court's summary of the record in this Opinion and Order, however, only includes the evidence relevant to the claims at issue regarding Plaintiff's carpal tunnel syndrome.

[4] Plaintiff originally claimed a disability onset date of December 21, 2006. (R. 20, 263, 280).  The administrative record does not reflect that Plaintiff amended that date prior to ALJ Walters's decision.  During Plaintiff's hearing, the ALJ noted that the 2006 alleged onset date appeared to mirror a prior application, which had been denied in 2014, but that there were no records to support such a date in this application. (*See* R. 61-62).  In his decision denying Plaintiff's instant application, the ALJ determined that "[b]etween the first quarter of 2007 and the fourth quarter of 2016, as well as between the first quarter of 2018 and December 31, 2018, there was no continuous 12-month period during which the [Plaintiff] ha[d] not engaged in substantial gainful activity," and that Plaintiff had not engaged in substantial gainful activity beginning on January 1, 2019. (R. 23).  In other words, January 1, 2019,

cholesterol, hypertension, asthma, depression, arthritis, chronic back pain and morbid obesity. (*Id.*). On physical examination, Plaintiff was not in acute distress, (R. 397), had swelling (1+) of her lower legs and ankles, and some hand swelling from her medication, (R. 396-97). On September 10, 2012, Plaintiff sought follow-up care for her body pain. (R. 394). Plaintiff reported she was doing "okay," and the swelling (1+) of her hands and feet remained "stable." (*Id.*).

Plaintiff presented with worsening pain, weakness and numbness in her left arm on July 3, 2013. (R. 413). A cervical spine X-ray revealed mild multilevel uncovertebral joint arthropathy that was more pronounced on the right side, right foraminal narrowing on the right side at C3-C4, C4-C5 and C5-C6. (*Id.*). On August 29, 2013, Plaintiff sought care for pain, weakness, and radiating tingling in her left arm. (R. 401). Plaintiff also reported difficulty grasping objects with her left arm. (*Id.*). On physical examination, Plaintiff had full (5/5) strength, and normal motor skills, reflexes, and sensation. (R. 402).

## ii. Industrial Medicine Associates, P.C.

On May 14, 2014, Dr. Sharon Revan, M.D., performed an internal medicine examination on Plaintiff at the behest of the New York State Office of Temporary & Disability Assistance's Division of Disability Determinations ("Division of Disability"). (R. 416). Plaintiff's chief complaints included low back pain, headaches, hypertension, diabetes and asthma. (*Id.*). Plaintiff also stated that she experienced intermittent numbness in her hands. (*Id.*). Plaintiff told the doctor that she was able to shower, dress herself, cook, clean, do laundry and shop, but her

---

was Plaintiff's determined alleged disability onset date. (*See id.*). Moreover, in Plaintiff's counsel's letter to the Appeals Council seeking review of the ALJ's decision, Plaintiff sought review from January 1, 2019 through May 30, 2020. (R. 247) ("The period at issue is thus January 1, 2019, to May 30, 2020."). Additionally, in Plaintiff's brief before this Court, Plaintiff "submits that she became disabled on January 1, 2019 and she is challenging the ALJ's finding that she was not disabled from January 1, 2019 through May 30, 2020." (Pl. Br. at 5, n.1). Thus, the Court considers January 1, 2019 as the disability onset date. Accordingly, the Court's discussion separates the medical evidence into pre-and-post January 1, 2019.

"hand cramp[ed]." (R. 417).  On physical examination, Dr. Revan observed that Plaintiff was not in acute distress, had no swelling, had full range of motion of her shoulders, elbows, forearms and wrists bilaterally, had full (5/5) upper and lower extremity strength bilaterally, did not have any sensory deficits, had full (5/5) grip strength bilaterally, and had fully intact hand and finger dexterity. (R. 417-19).  Dr. Revan opined that Plaintiff's diagnoses included low back pain, headaches, hypertension, diabetes and asthma. (R. 419).  Plaintiff's prognosis was "fair," and Dr. Revan opined that Plaintiff had: (1) no limitations with upper extremities for fine and gross motor activities; (2) mild limitations with sitting, standing, climbing stairs and laying down due to back pain; (3) limitations with walking and climbing stairs due to shortness of breath; and (4) limitations with personal grooming and activities of daily living due to hand cramps and back pain. (*Id*.).

### iii.  St. Lawrence Community Health Center

On March 22, 2017, Plaintiff visited St. Lawrence Community Health Center with depression, back and hand pain, a cold and cough. (R. 540).  Plaintiff reported that she had been experiencing pain and stiffness in her hands for four years, and that her hands were weak and she could not "open jars or carry bags." (*Id*.).  Moreover, Plaintiff said she had previously been prescribed splints for her hands by another physician, but the splints did not alleviate her pain at night. (*Id*.).  On physical examination, Plaintiff had a normal range of motion in her extremities and mild tenderness bilaterally in her hands. (*Id*.).  Dr. Rachana N. Chowlera, M.D., refilled Plaintiff's prescription for ibuprofen, instructed Plaintiff to wear cock-up splints, and referred her to rheumatology and neurology for further evaluation. (R. 541).

Plaintiff sought follow-up treatment from Dr. Chowlera on March 20, 2018 for, *inter alia*, tingling and numbness in her hands and feet. (R. 447-48).  Dr. Chowlera diagnosed Plaintiff

with paresthesia in her legs and hands and referred her to a vascular surgeon to evaluate the

tingling and numbness in her legs. (R. 448-49).

### iv.  Montefiore Medical Center

On November 1, 2018, Dr. Phyllis Bieri, M.D., performed an electromyography/nerve

conduction study ("EMG") on Plaintiff's lower extremities. (R. 424, 427).  Plaintiff's physical

examination revealed normal muscle tone and strength bilaterally, symmetric reflexes and

normal sensation and coordination. (R. 426).  Dr. Bieri's study was "mostly normal" on the

lower extremities, and she opined that "[w]hile cramps can be associated with neuropathy or

statin use, they are mostly benign." (R. 427).  Dr. Bieri further noted that gabapentin had worked

well to alleviate Plaintiff's symptoms, and that passive muscle stretching may offer Plaintiff

further relief. (*Id*.).

### v.  Urban Health Plan, Inc.

A right hand X-ray taken on May 15, 2017 by Dr. Robert Solomon, M.D., was

"unremarkable." (R. 558).

Plaintiff sought follow-up treatment from neurologist Dr. Yelena Lindenbaum, M.D., on

November 14, 2018. (R. 480).  Plaintiff did not have any complaints, and reported that she had

"enough meds." (*Id*.).  Her physical examination showed 0+ deep tendon reflexes in all

extremities, diminished pinprick sensation below the ankles and feet and in the first to third

fingers bilaterally and a positive Tinel's sign test on the right side. (*Id*.).  Dr. Lindenbaum's

assessments included carpal tunnel syndrome on both sides. (*Id*.).  Dr. Lindenbaum noted

Plaintiff's EMG[5] was normal and that Plaintiff was "vertually [sic] asymptomatic." (*Id*.).

---

[5] Dr. Lindenbaum's reference to an EMG appears to have been referring to the November 2018 EMG of Plaintiff's
lower extremities.

**2.  Medical Evidence After the Disability Onset Date**

**i.  St. Lawrence Community Health Center**

On February 8, 2019, Physician Assistant ("PA") Lucia Jimenez Morales re-evaluated Plaintiff for her diabetes and medication refills. (R. 437).  Plaintiff reported that she "fe[lt] well" and had no new complaints. (*Id*.).  On physical examination, Plaintiff had a normal range of motion bilaterally, no edema, and normal strength in all extremities. (R. 437-38).  During a follow-up examination on September 19, 2019, Plaintiff informed PA Morales that she had worsening numbness and tingling in both hands. (R. 517).  PA Morales noted that Plaintiff had a positive Phalen's test and referred her to neurology for further evaluation of Plaintiff's carpal tunnel syndrome on both sides. (R. 517-18).

At a follow-up visit on February 14, 2020, Plaintiff complained of worsening pain in her hands, with cramping, weakness and inability to grab things, comb her hair and cook. (R. 587).  Plaintiff informed Dr. Chowlera that her EMG of her upper extremities was rescheduled for the end of March 2020. (*Id*.).  Dr. Chowlera noted that Plaintiff's hands were slightly swollen and she had a positive Tinel's sign test, but no erythema. (*Id*.).  Dr. Chowlera advised Plaintiff to wear wrist splints. (R. 588).

**ii.  Industrial Medicine Associates, P.C.**

On June 19, 2019, Dr. Michael Healy, M.D., conducted an internal medicine examination of Plaintiff at the request of the Division of Disability. (R. 504).  Plaintiff's chief complaints included lower back pain that was aggravated by prolonged sitting, standing or walking, elevated cholesterol, asthma and high blood pressure. (*Id*.).  Plaintiff reported that she was able to cook, do some cleaning, shower and dress herself, but that she needed help doing the laundry and shopping due to her back pain. (R. 505).  Dr. Healy observed that Plaintiff was not in acute

distress, and that Plaintiff's hand and finger dexterity were intact, and that her grip strength was decreased bilaterally in both hands (4/5). (R. 506-07).  Dr. Healy's listed diagnoses included: (1) lower back pain, probable lumbar spinal intervertebral disc disruption; (2) morbid obesity; (3) hypertension; (4) diabetes; (5) asthma; and (6) bilateral hand pain, probable carpal tunnel. (*Id*. at 507).  Based on these findings, Dr. Healy opined that Plaintiff had the following limitations: (1) avoid exposure to respiratory irritants, dust and smoke; (2) moderate limitations with sitting, standing, walking, bending, lifting and climbing stairs; and (3) mild limitations in grasping and holding objects with either hand. (*Id*.).

Additionally, that same day, Plaintiff presented for a psychiatric evaluation with Dr. David Schaich, Psy.D. (R. 499).  Plaintiff reported a history of depression that, at times, interfered with her daily activities, and caused difficulties sleeping. (*Id*.).  Plaintiff told Dr. Schaich that she was able to dress, bathe and groom herself, cook, clean, do laundry and shop, make money, take public transportation and socialize. (R. 501).  Plaintiff spent her days "doing daily household routine activities and watching TV." (*Id*.).  Dr. Schaich opined that Plaintiff had an unspecified depressive disorder and that her prognosis was "fair." (R. 502).

### iii.  Urban Health Plan, Inc.

On October 30, 2019, neurologist Dr. Helen Chang, M.D. evaluated Plaintiff for numbness and tingling in her hands. (R. 700).  Plaintiff told Dr. Chang that she first felt the numbness, tingling, and "pins and needles" in her hands beginning in 2017. (*Id*.).  Plaintiff said that the tingling was "9/10 severity" and was triggered by using her hands for household activities, including cooking and cleaning. (*Id*.).  Further, Plaintiff stated that the cramping in her hands was relieved by stretching. (*Id*.).  Upon physical examination, Dr. Chang observed that Plaintiff had full strength and spontaneous movements throughout her extremities and normal

rapid alternating movements with symmetric and full fingertips and hand opening/closing. (*Id*.). Dr. Chang further noted that Plaintiff had reproducible tingling in the fourth and fifth finger in the right hand, a positive Tinel's sign test on the left hand, decreased sensation in the ring and pinky fingers on the right side and the thumb and first finger on the left side, and graphesthesia throughout. (*Id*.). Dr. Chang diagnosed Plaintiff with carpal tunnel syndrome on both sides and ordered an EMG for diagnostic clarification. (R. 701).

Plaintiff sought follow-up treatment from Dr. Chang on February 5, 2020. (R. 648). Plaintiff had been unable to keep her EMG appointment because she was out of the country. (*Id*.). Plaintiff's physical examination revealed no reproducible tingling with palpation of the ulnar notch, negative Tinel's sign and Phalen's tests, normal sensation to light touch and pin prink, graphesthesia throughout and decreased sensation to light touch and pin prick on the thumb and first finger on the left side. (R. 648-49). Dr. Chang prescribed Plaintiff splints for both hands to wear as much as possible at night while sleeping, and ordered an EMG. (R. 649).

### iv.  Montefiore Medical Center

From May 16 through May 18, 2020, Plaintiff was admitted to Montefiore Hospital for weakness on her left side. (R. 763). Plaintiff initially presented to emergency medical staff with decreased grip strength on the left side and decreased sensitivity to light touch. (*Id*.). At discharge, Plaintiff had full (5/5) strength throughout her extremities, no edema or tenderness and intact sensation. (R. 773).

### v.  State Agency Consultant –Dr. R. Abueg, M.D.

On July 25, 2019, Dr. R. Abueg, M.D., a state agency medical consultant, reviewed Plaintiff's treatment records. (R. 104-05, 115-16). Dr. Abueg assessed the following exertional limitations: (1) Plaintiff could occasionally lift and/or carry up to 20 pounds; (2) Plaintiff could

frequently lift and/or carry up to 10 pounds; (3) Plaintiff could stand and/or walk for 6 hours in

an 8-hour workday; and (4) Plaintiff could sit for 6 hours in an 8-hour workday. (R. 115).  Dr.

Abueg opined that Plaintiff had an unlimited ability to push and/or pull, and did not have

postural, manipulative, visual, communicative or environmental limitations. (R. 115-16).

### vi.  State Agency Consultant –Dr. A. Saeed

Dr. A. Saeed, a state agency medical consultant, reviewed Plaintiff's medical records on

January 17, 2020. (R. 129-31).  Dr. Saeed noted that Plaintiff had 5/5 upper and lower

extremities strength and 4/5 grip strength. (R. 130).  Additionally, Dr. Saeed stated that Plaintiff

had a recent diagnosis of carpal tunnel syndrome, with numbness and tingling in both hands, but

had no limitations to fingering and handling prior to September 19, 2019. (R. 131).

### B.  Nonmedical Evidence

### 1.  Plaintiff's Function Report

On May 7, 2019, Plaintiff completed a function report. (R. 327-34).  Plaintiff stated that

she lived in a house with her family, and that her daily schedule consisted of taking care of her

children, including feeding them and making sure they went to school. (R. 327-28).  Since her

injury, Plaintiff said that she had been unable to work, lift heavy things or do her children's hair

due to pain in her hands. (R. 328).  Plaintiff required help from her daughter doing her hair and

experienced difficulty cleaning and washing dishes. (R. 328-29).  Plaintiff noted that she cooked

three times a week, but otherwise had to "buy out" because of her injuries. (R. 329).  Moreover,

Plaintiff stated that she used to be able to cook every day, but now could only cook sometimes.

(*Id*.).  Plaintiff reported that she: (1) was able to clean the house and do laundry; (2) walked or

took public transit to appointments; (3) grocery shopped every two weeks; (4) paid bills; and (5)

socialized, including going to her sister's house once a week. (R. 329-31).  Plaintiff reported that

she needed help completing these tasks, and would ask her children for assistance. (R. 329-30). However, Plaintiff could not: (1) "lift anything heavy;" (2) "stand for to[o] long;" (3) "walk for long;" and (4) sit for too long. (R. 332).  Plaintiff also experienced difficulty walking up and down stairs, kneeling and squatting, and stated that her hands "cramp up a lot." (*Id*.).  Plaintiff indicated that she is right-handed. (R. 333).

### 2.  Plaintiff's Testimony

Plaintiff was represented by counsel at the June 26, 2020 telephonic hearing and testified via interpreter. (R. 52-55).  Counsel confirmed that he had reviewed the record, and it appeared complete. (R. 57).  Plaintiff testified that she was not working at the time of the hearing. (R. 73). From 2006 to 2019, she had worked in a daycare, babysitting, and selling food. (R. 73-74).

The ALJ proceeded to ask Plaintiff questions regarding her medical history.  Plaintiff testified that she  had a stroke in May 2020, and that she had diabetes. (R. 67-68).  After her stroke, Plaintiff was prescribed a cane, which she used in her right hand. (R. 77-78).  Plaintiff also testified that she first experienced depression "many years ago," and again "two or three years" ago, and that she took medication. (R. 72-73).  Due to her back pain, Plaintiff was not able to stand for more than 30 to 40 minutes at a time, and had trouble "jump[ing] up" by herself, getting dressed and putting on shoes and mopping. (R. 75, 80).  Additionally, Plaintiff could not walk longer than one and a half blocks due to numbness and cramping in her toes. (R. 78). Plaintiff was prescribed prescription glasses for her bilateral hypermetropia, and did not have issues with her vision when wearing her glasses. (R. 80-81).

Plaintiff testified that the strength of her hand "was not the same" and that she experienced difficulty grabbing and picking up things. (R. 63-64).  Plaintiff did not recall exactly when she had issues with her hands, but estimated it was more than two years prior. (R. 65).

Due to the issues with her hands, Plaintiff experienced difficulty completing household tasks, including laundry and cooking, and had to stop and massage them due to pain in her fingers. (R. 79). Plaintiff was prescribed an assistive device to wear on her hands at night. (*Id*.).

### 3. Vocational Expert Testimony

Vocational Expert ("VE") Cherie Plante ("VE Plante") testified at Plaintiff's hearing. (R. 81). VE Plante testified that Plaintiff's prior work selling food would be performed at a medium exertional level (composite job of food service manager and cook), and her babysitting work would be performed at a medium exertional level. (R. 82-83). The ALJ posed a hypothetical to VE Plante, asking her to assume an individual with Plaintiff's age, education and work experience who can perform the full range of light work, as defined in the Dictionary of Occupational Titles ("DOT"). (R. 83). VE Plante testified that such an individual could not perform Plaintiff's past work, but could perform the standalone job of food service manager if not a composite job with the cook position. (*Id*.). The ALJ asked VE Plante to further assume that the individual can frequently climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, and frequently balance, stoop, kneel, crouch and crawl. (*Id*.). VE Plante testified that such an individual could perform Plaintiff's past work of food service manager. (*Id*.). ALJ Walters asked the VE to further assume that the individual can occasionally reach, including overhead reaching, handle, finger, feel, and push and pull with both upper extremities. (R. 83-84). VE Plante opined that such an individual could not perform Plaintiff's past work as a food service manager. (R. 84). Further, VE Plante testified that an individual with the above limitations could perform the following jobs at a light exertional level: ticket taker, photocopying machine operator and order caller. (R. 84-85). VE Plante confirmed that these positions could all be performed with the further limitations of: occasionally operating foot controls with both lower

extremities, avoiding exposure to unprotected heights, moving mechanical parts and the operation of heavy machinery, standing/walking for two hours and sitting for six hours in an eight-hour workday with normal breaks, and being limited to simple routine tasks. *(*R. 85). However, if the individual could only understand, retain, and follow simple instructions and sustain sufficient attention to perform simple, repetitive tasks and routine with no strict production pace or assembly line quotas, and was limited to only occasional interaction with coworkers, supervisors and the public, and retained sufficient capability to respond appropriate to usual work situations and deal with changes in a routine, the individual could only perform the job of photocopying machine operator. (R. 86).  VE Plante testified that an individual with these further limitations with interactions with coworkers and the public, and the use of a cane in the right hand for balance, could also perform the jobs of router and parimutuel-ticket checker. (R. 86-87).  VE Plante confirmed that her testimony was consistent with the DOT, except for her opinions regarding the individual's ability to perform positions where the DOT calls for frequent reaching, handling and fingering and sit/stand limitations for positions classified as light work, which were derived from her training and professional experience as a vocational rehabilitation counselor. (R. 88).

## C.  The ALJ's Decision

ALJ Walters first determined that Plaintiff met the insured status requirements of the Social Security Act ("Act") through December 31, 2022. (R. 23).  Thereafter, ALJ Walters applied the five-step procedure established by the Commissioner for evaluating disability claims. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). (R. 23-32).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity beginning on January 1, 2019. (R. 23). At step two, the ALJ determined that, since January 1, 2019, Plaintiff had the severe impairments

of lumbar spine degenerative disc disease; status post-stroke; diabetes mellitus; and obesity. (*Id*.). As to Plaintiff's non-severe impairments, including her carpal tunnel syndrome, the ALJ found the May 2014 opinion of Dr. Revan "persuasive" that Plaintiff "has no limitations with the upper extremities for fine and gross motor activities" because it was consistent with Plaintiff's "essentially normal exertional activities of daily living," treatment notes, and diagnostic testing. (R. 24). ALJ Walters found the consultative opinions of Dr. Healy and Dr. Saeed "unpersuasive" to the extent that they opined that Plaintiff had manipulative limitations. (*Id*.). In the ALJ's view, these opinions were inconsistent with Plaintiff's reported daily activities, "internal medicine consultative examinations and treatment notes which showed minimal to normal findings on diagnostic testing and objective clinical examinations," and with Dr. Revan's 2014 opinion. (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. 26).

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she "can frequently climb ramps and stairs, and can occasionally climb ladders, ropes and scaffolds" and "can frequently balance, stoop, kneel, crouch and crawl." (R. 27). The ALJ considered all of Plaintiff's symptoms and their consistency with the objective medical evidence and other evidence in arriving at the RFC, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. (*Id*.). The ALJ also considered the opinion evidence and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §§ 404.1520c

and 416.920c. (*Id*.).  Ultimately, the ALJ concluded that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's

"statements concerning the intensity, persistence and limiting effects of these symptoms are not

fully supported for the reasons explained in th[e] decision." (*Id*.).

The ALJ found the opinions of state consultative examiners Dr. Revan, Dr. Abueg at the

initial application level, and Dr. Saeed at the reconsideration level "persuasive" regarding

Plaintiff's severe impairments. (R. 29).  ALJ Walters noted that Dr. Revan "opined in May of

2014 that the claimant has mild limitations with sitting, standing, climbing stairs, and laying

down; and has limitations in walking, personal grooming, and activities of daily living." (*Id*.).

The ALJ acknowledged that Dr. Revan's usage of terms such as "mild" and "limitations" are

vague as to frequency of limitations, but found that the opinion is otherwise supported by the

evidence, including consultative examinations and treatment notes—"which showed some yet

mostly minimal to normal findings on diagnostic testing and objective clinical examinations."

(*Id*.).  The ALJ further stated that "Dr. Abueg and Dr. Saeed opined in July of 2019 and January

of 2020, respectively, that the claimant can occasionally lift and carry 20 pounds, and stand/walk

for 6 hours total and sit for 6 hours total in an 8-hour workday." (*Id*.).

The ALJ found the opinion of state internal medicine consultative examiner Dr. Healy

"unpersuasive" in relation to the severe impairments. (*Id*.).  Specifically, ALJ Walters found that

"Dr. Healy's opinion is unsupported by the internal medicine consultative examinations and

treatment notes which showed some yet mostly minimal to normal findings on diagnostic testing

and objective clinical examinations," and inconsistent with the opinions of Dr. Revan, Dr. Abueg

and Dr. Saeed, Plaintiff's reported normal daily activities, the gap in treatment from 2013

through 2016, Plaintiff's non-compliance with treatment, and Plaintiff's statements that she felt well throughout treatment notes. (*Id.*).

At step four, the ALJ found that Plaintiff is unable to perform past relevant work of hand packager, child monitor, and food service manager and cook (composite job). (R. 30).  At step five, after considering Plaintiff's RFC, and Plaintiff's age, education and work experience, the ALJ concluded that, prior to May 31, 2020, she was not disabled under the Act because she could perform other work that existed in significant numbers in the national economy. (R. 31).[6]

## II.  DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed and remanded for further administrative proceedings because: (1) the ALJ erred at step two in not finding Plaintiff's carpal tunnel syndrome a severe impairment, (Pl. Br. at 10-12); and (2) the ALJ's RFC determination is flawed because the ALJ failed to include manipulative limitations in the hands or fingers, (*id*. at 12-13).  The Commissioner argues that: (1) substantial evidence supports the ALJ's findings regarding the severity of impairments at step two, (Comm'r Br. at 13-16); (2) substantial evidence supports the ALJ's RFC determination, (*id*. at 16-21); and (3) substantial evidence supports the ALJ's conclusion that Plaintiff was able to perform work that exists in significant numbers in the national economy until May 31, 2020, (*id*. at 21-22).

## A.  Legal Standards

A claimant is disabled if he or she "is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

---

[6] Plaintiff's age category changed on May 31, 2020 to an individual of advanced age and, pursuant to governing regulations, she would be unable to transfer job skills to other occupations at that time—thus requiring a finding of "disabled" under Medical Vocational Rule 202.06. (*See* R. 30-32).

than 12 months.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (per curiam) (quoting 42 U.S.C. § 423(d)(1)(A)).  The SSA has enacted a five-step sequential analysis to determine if a claimant is eligible for benefits based on a disability:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant has the general burden of proving that he or she is statutorily disabled "and bears the burden of proving his or her case at steps one through four." *Cichocki*, 729 F.3d at 176 (quoting *Burgess*, 537 F.3d at 128).  At step five, the burden then shifts "to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

When reviewing an appeal from a denial of SSI or disability benefits, the Court's review is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 42 U.S.C. § 405(g).  Substantial evidence means "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Put another way, a conclusion must be buttressed by "more than a mere scintilla" of record evidence.

*Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).  The substantial evidence standard is "very deferential" to the ALJ. *Brault*, 683 F.3d at 448.  The Court does not substitute its judgment for the agency's "or 'determine *de novo* whether [the claimant] is disabled.'" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (alteration in original) (quoting *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)).

However, where the proper legal standards have not been applied and "might have affected the disposition of the case, [the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).  Therefore, "[f]ailure to apply the correct legal standards is grounds for reversal." *Id*.

On January 18, 2017, the SSA considerably revised its regulations for evaluating medical evidence. The rules went into effect on March 27, 2017, and therefore, apply to the instant case. Under the new regulations, the treating physician rule no longer applies. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Therefore, no special deference is given to the treating physician's opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, "[the Commissioner] will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The updated regulations also define a "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions . . . ." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  Thus, a medical opinion must discuss both a claimant's

limitations and "what [the claimant] is still capable of doing" despite those limitations. *Michael H. v. Saul*, 5:20-CV-417 (MAD), 2021 WL 2358257, at \*6 (N.D.N.Y. June 9, 2021).  Relatedly, conclusory statements by a claimant's provider concerning issues reserved to the Commissioner — for instance, whether the claimant is disabled under the Act — are "inherently neither valuable nor persuasive" and will not be analyzed by the ALJ. 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

**B.  The ALJ's Duty to Develop the Record**

Initially, the Court must be satisfied that the record is fully developed before determining whether the Commissioner's decision is supported by substantial evidence. *See Smoker v. Saul*, 19-CV-1539 (AT) (JLC), 2020 WL 2212404, at \*9 (S.D.N.Y. May 7, 2020) ("Whether the ALJ has satisfied this duty to develop the record is a threshold question.").  "[I]n light of the 'essentially non-adversarial nature of a benefits proceeding[,]'" "[a]n ALJ, unlike a judge at trial, has an affirmative duty to develop the record." *Vega v. Astrue*, No. 08 Civ. 1525 (LAP) (GWG), 2010 WL 2365851, at \*2 (S.D.N.Y. June 10, 2010) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  "This duty is present even when a claimant is represented by counsel." *Atkinson v. Barnhart*, 87 F. App'x 766, 768 (2d Cir. 2004) (summary order).  "Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence" is appropriate. *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997).  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d. Cir. 1996)); *see also Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order).

Here, the Court finds that there are no obvious gaps in the record.  The record consists of voluminous medical records, (R. 386-423, 744-1009); treatment records, (R. 424-98, 517-60, 569-623, 624-743); Plaintiff's function report, (R. 327-34); medical opinions from consultative examiners, (R. 499-516, 551-68); and Plaintiff's testimony, (R. 59-81).  Moreover, at the hearing, Plaintiff's counsel confirmed that he had reviewed the record, and did not identify any deficiencies. (R. 57).  *See David B. C. v. Comm'r of Soc. Sec.*, 1:20-CV-01136 (FJS/TWD), 2021 WL 5769567, at \*7 (N.D.N.Y. Dec. 6, 2021) (ALJ fulfilled duty to develop the record where "Plaintiff did not object to the contents of the record or identify any gaps that need to be filled"). Accordingly, the Court concludes that the ALJ fulfilled his duty to develop the record.

## C.  The ALJ's Severe Impairment Determination

Plaintiff argues that the ALJ erred in not finding that Plaintiff's carpal tunnel syndrome is a severe impairment because the "overwhelming evidence of record here supports the fact that [Plaintiff's] carpal tunnel syndrome has a significant effect on her abilities and is severe." (Pl. Br. at 10).  The Commissioner counters that the ALJ's severity finding was supported by substantial evidence, and, in any event, any step two error was harmless because the ALJ considered the effects of Plaintiff's carpal tunnel syndrome throughout the remainder of the sequential analysis. (Comm'r Br. at 13-16).

Step two requires the Commissioner to "determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012); *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is a medically determinable impairment or combination of impairments that "significantly limits [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  "In addition, an impairment must meet the

'duration requirement,' meaning that 'it must have lasted or must be expected to last for a continuous period of at least 12 months,' unless the 'impairment is expected to result in death.'" *Carela Rosa v. Comm'r of Soc. Sec.*, 18 Civ. 2926 (GWG), 2019 WL 4409444, at *10 (S.D.N.Y. Sept. 16, 2019) (citing 20 C.F.R. §§ 404.1509, 416.909).  The Commissioner must "'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Burgin v. Astrue*, 348 F. App'x 646, 647 (2d Cir. 2009) (summary order) (alteration in original) (quoting 20 C.F.R. § 404.1523).  Plaintiff has the burden at step two of establishing that she has a medically severe impairment or combination of impairments. *Taylor*, 32 F. Supp. 3d at 265; *see also* 20 C.F.R. § 404.1512(a).  "[T]he standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre*, 758 F.3d at 151.  However, "[t]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 266 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

Here, the Court finds that the ALJ erred by ignoring or misinterpreting evidence that suggested that Plaintiff's carpal tunnel syndrome rose above the *de minimis* standard.  First, the ALJ relied on a November 2018 EMG/NCV study of the "upper extremities" that "was normal." (R. 24).  However, upon review of the record, it appears that the EMG study referenced was of the *lower* extremities. (*See* R. 427) ("Nerve conduction studies were performed on the *bilateral lower extremities*….This was a mostly normal electrodiagnostic study of the *lower extremities*.") (emphasis added).  The ALJ's mistake is not harmless—as he repeatedly relied on this "normal" diagnostic testing in making his determination regarding the severity of Plaintiff's carpal tunnel

syndrome, and in assessing the persuasiveness of the consultative opinions. (*See* R. 24).

"Where…an ALJ misreads a critical piece of evidence in the record, and then relies on his error

in reaching his opinion, the opinion cannot be said to be supported by 'substantial evidence.'"

*Joseph v. Astrue*, No. 06 Civ. 1356 (RMB) (DCF), 2007 WL 5035942, at *5 (S.D.N.Y. Dec. 28,

2007), *report and recommendation adopted*, 2008 WL 850158 (S.D.N.Y. Mar. 20, 2008) (citing

*Maldonado v. Apfel*, No. 98 Civ. 9037 (AKH), 2000 WL 23208 (S.D.N.Y. Jan. 13, 2000)).

Accordingly, remand is appropriate. *See id*. (noting that "[w]here the ALJ bases his decision on a

misinterpretation of the evidence, remand may be warranted to afford the ALJ with an

opportunity to re-evaluate the plaintiff's claim in light of what the evidence actually reveals").

Second, the ALJ found the opinion of Dr. Revan "persuasive" with respect to Plaintiff's

carpal tunnel syndrome. (R. 24).  However, that opinion is from May 2014—nearly five years

prior to the filing of Plaintiff's application, and six years prior to Plaintiff's hearing.  Moreover,

the May 2014 opinion did not take into account the medical records demonstrating, *inter alia*,

Plaintiff's carpal tunnel syndrome diagnosis and clinical examinations demonstrating tenderness,

tingling, and decreased strength and sensation in her hands and fingers.  Therefore, this opinion

"was stale and could not [have] constituted substantial evidence" for the ALJ's conclusion. *Dodd*

*v. Berryhill*, No. 1:16-CV-00826 (MAT), 2018 WL 1192891, at *4 (W.D.N.Y. Mar. 8, 2018)

("Dr. Miller's opinion was issued over a year before the hearing, prior to the worsening of

Plaintiff's carpal tunnel syndrome and her subsequent surgery.  As such, it was stale and could

not constituted [sic] substantial evidence for the ALJ's RFC finding."). *See also Jones v.*

*Comm'r of Soc. Sec.*, No. 10 CV 5831 (RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22,

2012) (finding ALJ erred where "by plaintiff's hearing date, the disability examiner's opinion

that Jones could perform light work was 1.5 years stale, and did not account for her deteriorating

condition"); *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) ("It is true that medical source opinions that are 'conclusory, stale, and based on an incomplete medical record' may not be substantial evidence to support an ALJ finding.") (quoting *Griffith v. Astrue*, No. 08–CV–6004 (CJS), 2009 WL 909630, at \*9 n. 9 (W.D.N.Y. July 27, 2009)).

Third, in determining that Plaintiff's carpal tunnel syndrome was non-severe, the ALJ repeatedly relied on Plaintiff's "essentially normal activities of daily living." (R. 24).  However, the ALJ's decision does not acknowledge Plaintiff's statements about her limitations.  Plaintiff's function report stated that: (i) Plaintiff had been unable to work, lift heavy things or do her children's hair due to pain in her hands, (R. 328); (ii) Plaintiff required help from her daughter doing her hair and experienced difficulty cleaning and washing dishes, (R. 328-29); (iii) while Plaintiff had previously been able to cook "every day," she now only cooked three times a week, and otherwise had to "buy out," (R. 329); (iv) Plaintiff needed help from her children to complete household tasks, and would ask her children for assistance, (R. 329-30); and (v) Plaintiff's hands "cramp up a lot," (R. 332).  During the hearing, Plaintiff testified that: (i) the strength of her hand "was not the same" and that she experienced difficulty grabbing and picking up things, (R. 63-64); (ii) she had been experiencing issues with her hands for more than two years, (R. 65); (iii) she had trouble completing household tasks due to the pain in her hands, including laundry and cooking, and had to stop and massage them due to pain in her fingers, (R. 79); and (iv) Plaintiff was prescribed an assistive device to wear on her hands at night, (*id*.).  The Court finds that "'[t]he ALJ's reference to plaintiff's daily activities was selective in that it did not consider the limited basis on which plaintiff performed these activities and, even then, frequently with help.'" *Davila v. Comm'r of Soc. Sec.*, 16-CV-4774 (KAM), 2018 WL 5017748,

at *13 (E.D.N.Y. Oct. 16, 2018) (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002)).  However, "[a]n ALJ… 'cannot pick and choose only that portion of the evidence that supports his conclusions.'" *Id*.  Accordingly, the ALJ's assessment of the impact of Plaintiff's carpal tunnel syndrome on her activities of daily living is not supported by substantial evidence.  On remand, the ALJ should consider the limitations reflected in Plaintiff's function report and testimony.

Fourth, the ALJ cited to certain "treatment notes" and "objective clinical examinations" that purportedly support a non-severe determination.  However, based on a review of the record, the ALJ's conclusion is not supported by substantial evidence.  To briefly summarize, in March 2018, Plaintiff sought treatment for tingling and numbness in her hands and feet and was diagnosed with paresthesia in her hands. (R. 447-49).  In November 2018, Plaintiff had a positive Tinel's sign test on the right side, diminished pinprick sensation in the first to third fingers bilaterally, and was diagnosed with bilateral carpal tunnel syndrome. (R. 480).  During her June 2019 consultative examination, Dr. Healy observed that Plaintiff had decreased bilateral grip strength (4/5), and he opined that she had mild limitations in grasping and holding objects. (R. 506-07).  During a doctor's visit in September 2019, Plaintiff complained of worsening numbness and tingling in both hands, had a positive Phalen's test, and was diagnosed with carpal tunnel syndrome in both sides. (R. 517-18).  In October 2019, at a neurologist consult, Plaintiff continued to complain of tingling and numbness in her hands; Plaintiff was diagnosed with carpal tunnel syndrome and prescribed splints after a physical examination revealed reproducible tingling in the fourth and fifth finger on the right hand, a positive Tinel's sign test on the left hand, and decreased sensation in the ring and pinky fingers on the right side and thumb and first finger on the left side, as well as graphesthesia throughout. (R. 700-01).  In February 2020,

Plaintiff complained of worsening pain and weakness in her hands, and an inability to grab things and complete household tasks (R. 587). During that visit, Plaintiff's hands were swollen and she had a positive Tinel's sign test, and she was prescribed wrist splints. (R. 587-88). The ALJ's terse acknowledgment of "some treatment notes [that] showed some findings in the hands" fails to account for this evidence. Indeed, as support for the non-severe determination, the ALJ cites to: (1) a 2017 X-ray of the hands and Dr. Revan's 2014 consultative examination, which pre-date Plaintiff's carpal tunnel syndrome diagnosis; (2) a 2018 EMG of the *lower* extremities; and (3) treatment records, which are largely focused on Plaintiff's psychological treatment. (R. 24, citing Ex. 11F (R. 551-60), 5F (R. 464-98)). It is unsurprising that there would not be findings regarding Plaintiff's hands in follow-up visits regarding Plaintiff's depression. *See, e.g.*, *Davila*, 2018 WL 5017748, at *14 ("The bulk of the document focused on plaintiff's mental status … It is therefore far from clear that the omission of carpal tunnel syndrome, or any other physical impairment, from this record could properly be considered as evidence that plaintiff's carpal tunnel syndrome did not limit her.") (internal citations to record omitted). Although an ALJ need not "reconcile explicitly every conflicting shred of medical testimony…[the Court] cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor." *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (internal citations omitted). Accordingly, the Court finds that the ALJ's conclusion that Plaintiff's carpal tunnel syndrome is not severe is not supported by substantial evidence.

In sum, "[t]he totality of the evidence undermines the ALJ's assessment of Plaintiff's [carpal tunnel syndrome] as non-severe." *Bedasie v. Comm'r of Soc. Sec.*, 20-CV-4094 (MKB), 2022 WL 4326122, at *10 (E.D.N.Y. Sept. 17, 2022). Accordingly, remand for further proceedings is required for reconsideration of the severity of Plaintiff's carpal tunnel syndrome.

*See Dorta v. Saul,* 18-CV-00396 (JLC), 2019 WL 3503961, at *11 (S.D.N.Y. Aug. 2, 2019)

(remanding for reconsideration of step two determination where "[t]he reports from his

physicians combined with his own testimony raise Ortiz's carpal tunnel syndrome above the *de

minimis* level"); *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 155 (N.D.N.Y. 2012) ("At the very least,

the ALJ should have given more consideration as to whether Plaintiff's diagnosed and

documented carpal tunnel syndrome resulted in more than a de minim[i]s limitation on her

ability to manipulate objects and use her hands (and particularly her right hand) more generally

in the performance of basic work activities."); *Davila,* 2018 WL 5017748, at *12-18 (finding

step two error where the ALJ "reached [the] conclusion [that the plaintiff's carpal tunnel

syndrome was not severe] based on an impermissibly selective reading of function reports, and

on a reading of treatment records that drew unsupported inferences").  On remand, the ALJ

should consider Plaintiff's function report and testimony regarding her limitations and the

medical evidence regarding Plaintiff's carpal tunnel syndrome diagnosis, symptoms and

treatment that may have resulted in more than a *de minimis* limitation on Plaintiff's ability to

grasp objects and use her hands.

**D.  The RFC Determination**

The ALJ determined that Plaintiff had the RFC to perform light work, as defined in 20

C.F.R. §§ 404.1567(b) and 416.967(b) and did not impose any manipulative limitations. (*See* R.

27).  Plaintiff argues that the ALJ's RFC determination is flawed because it failed to consider the

limitations from Plaintiff's carpal tunnel syndrome. (*See* Pl. Br. at 12).  The Commissioner

concedes that the ALJ "did not repeat his earlier analysis of Plaintiff's carpal tunnel syndrome as

part of the RFC analysis," but argues that the ALJ's decision as a whole demonstrates that he

"considered all of Plaintiff's symptoms and medically determinable impairments in finding that she could perform light work with postural limitations." (Comm'r Br. at 17).

When making an RFC determination, an ALJ must consider both severe and non-severe impairments. *See Parker-Grose v. Astrue*, 462 F. App'x. 16, 18 (2d Cir. 2012) (summary order); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' ... when we assess your [RFC]."). For this reason, failure to categorize an impairment as severe is harmless error as long as the ALJ proceeds to incorporate any limitations from such impairment into the RFC analysis. *See Vaughn v. Colvin*, 116 F. Supp. 3d 97, 103 (N.D.N.Y. 2015). In addition, an ALJ's failure to account for a claimant's non-severe impairment constitutes harmless error "absent evidence that these impairments contributed to any functional limitations." *See Andino v. Saul*, 1:18-CV-00379 (JJM), 2019 WL 4621878, at *2 (W.D.N.Y. Sept. 24, 2019) (quoting *Sherman v. Comm'r of Soc. Sec.*, No. 7:14-CV-0154, 2015 WL 5838454, *5 (N.D.N.Y. Oct. 7, 2015)); *Cabreja v. Colvin*, No. 14-CV-4658 (VSB), 2015 WL 6503824, at *37 (S.D.N.Y. Oct. 27, 2015) (holding that "vague representation" that ALJ had considered plaintiff's symptoms in making RFC finding did not fulfill ALJ's obligation to consider non-severe impairments at that step). In other words, even if an ALJ finds that a claimant's non-severe impairments result in only "mild" restrictions, the ALJ must analyze those restrictions in determining the claimant's RFC. *See Winter v. Comm'r of Soc. Sec.*, Case # 18-CV-632-FPG, 2020 WL 2465080, at *3 (W.D.N.Y. May 12, 2020).

Here, the ALJ's RFC analysis is devoid of any discussion of Plaintiff's carpal tunnel syndrome, or of finger and hand manipulation limitations. (*See* R. 27-29) However, "the omission of one or more severe impairments at step two may only be deemed harmless where the

ALJ also later considers the effects from the omitted impairment as part of the ultimate RFC determination." *Melendez v. Colvin*, No. 1:13-CV-1068, 2015 WL 5512809, at *5 (N.D.N.Y. Sept. 16, 2015).  Thus, "even if the ALJ reasonably found [Plaintiff's] carpal tunnel syndrome to be nonsevere, [he] still needed to consider [Plaintiff's] manipulative limitations, as reported by several medical professionals." *Dorta,* 2019 WL 3503961, at *12; *see also Davila*, 2018 WL 5017748, at *19 ("[E]ven if on remand the ALJ concludes that plaintiff's carpal tunnel syndrome is not severe, this conclusion will not excuse a failure to address the impact of any limitations as part of the RFC determination."); *Bedasie,* 2022 WL 4326122, at *11 ("Because the ALJ failed to account for any functional limitations associated with Plaintiff's [carpal tunnel syndrome] in determining Plaintiff's RFC, the Court remands the case.").  Moreover, while the Commissioner argues that the ALJ's error was harmless and, therefore, remand is unnecessary, (Comm'r Br. at 21), that is only true "[w]here application of the correct legal standard *could lead to only one conclusion*." *Schaal*, 134 F.3d at 504 (emphasis added).  However, based on the record, the Court cannot say that only one conclusion can be reached.  Indeed, as outlined above, the record contains conflicting evidence regarding Plaintiff's carpal tunnel syndrome diagnosis, the limitations resulting therefrom, and Plaintiff's activities of daily living.  The ALJ's decision only expressly considers the evidence supportive of the ALJ's conclusion that Plaintiff's carpal tunnel syndrome was a non-severe impairment, and is devoid of any consideration of the contrary evidence, which post-dates Plaintiff's carpal tunnel syndrome diagnosis.  Therefore, the Court is unable to conclude what weight should be assigned to the evidence, or whether, upon reconsideration, further clarification of the record will be needed that might alter the weight assigned to the evidence.  Rather, remand for further evaluation of the evidence is necessary—

and "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record." *Id*.

Accordingly, the Court remands the case for further evaluation of Plaintiff's RFC.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the case is remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Opinion and Order.  The Clerk of the Court is respectfully requested to terminate the pending motions (Docket Nos. 20 and 24), and close the case.

Dated:    September 19, 2023
            White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge

-28-